United States District Court
For the Northern District of California

1

2 UNITED STATES DISTRICT COURT

3 NORTHERN DISTRICT OF CALIFORNIA

4

5

6 MICHAEL JENE TORRES, et al.,

7 Plaintiffs, No. C 12-6364 PJH

8 v. **ORDER DISMISSING FIRST AMENDED COMPLAINT**

9 SANTA ROSA MEMORIAL HOSPITAL, et al.,

10

11 Defendants.
_____/

12 Defendants' motions to dismiss came on for hearing before this court on August 14,

13 2013. Plaintiffs Michael Jene Torres, Jr., Robert Sexton, and Zenaida Stilley ("plaintiffs")

14 appeared through their counsel, Douglas Fladseth. Defendants Santa Rosa Memorial

15 Hospital and St. Joseph Health System ("the Hospital defendants") appeared through their

16 counsel, Brett Schoel. Defendant Glenn T. Meade, M.D. ("Meade") appeared through his

17 counsel, Sonja Dahl. Having read the papers filed in conjunction with the motions and

18 carefully considered the arguments and the relevant legal authority, and good cause

19 appearing, the court hereby GRANTS in part and DENIES in part the Hospital defendants'

20 motion to dismiss, and GRANTS in part and DENIES in part Meade's motion to dismiss as

21 follows.

22 According to the first amended complaint ("FAC"), the facts are as follows. On

23 September 19, 2011 at about 3:30pm, the decedent, Michael Jene Torres ("Torres") was

24 brought by ambulance to the emergency room at Santa Rosa Memorial Hospital. FAC, ¶ 1.

25 Torres was suffering from neck pain and severe shaking/seizures due to alcohol withdrawal

26 and pneumonia. Id., ¶ 23. Torres was diagnosed with alcohol withdrawal and given one

27 milligram of a sedative (Lorazepam), and instructed to go to a clinic the next day. Id., ¶ 1.

28 Torres was discharged from the hospital at 7:30pm, but did not leave the hospital's

United States District Court

For the Northern District of California

1    premises. Id., ¶ 3.  Instead, Torres went to the hospital's cafeteria until 9:45pm, when he

2    was "forced to leave." Id.  At 2:00am, Torres was again found on hospital premises,

3    "seated on the floor in a hallway," and was again "forced to leave the building." Id., ¶ 33.

4    At 7:00am the next morning, Torres was found "lying in the parking lot moaning and in

5    apparent distress." Id., ¶ 3.  However, the hospital's nursing supervisor allegedly told

6    hospital staff that Torres was "not our problem," and to call 911 if anyone thought that he

7    needed help. Id., ¶ 36.  Torres died in the hospital parking lot later that morning. Id., ¶ 8.

8         In the FAC, plaintiffs assert three causes of action:  (1) violation of the Emergency

9    Medical Treatment and Active Labor Act ("EMTALA"); (2) violation of Welfare & Institutions

10   Code § 15657; and (3) general negligence.  As a threshold matter, the court notes that the

11   first amended complaint ("FAC") is no clearer than the original complaint in specifying

12   which claims are brought against which defendants, and instead appears to assert all

13   claims against "defendants."  At the hearing, plaintiffs made clear that their first cause of

14   action (under EMTALA) is asserted against only the Hospital defendants.

15        EMTALA imposes two requirements on hospital emergency departments: (1) if any

16   individual comes to the emergency department requesting examination or treatment, a

17   hospital must provide for "an appropriate medical screening examination within the

18   capability of the hospital's emergency medical department" (this is referred to as the

19   "screening" prong); and (2) if the hospital determines that an emergency medical condition

20   exists, it must provide "such treatment as may be required to stabilize the medical

21   condition" (the "stabilization" prong). See 42 U.S.C. § 1395dd.  The FAC alleges generally

22   that the Hospital "both fail[ed] to screen and fail[ed] to stabilize," but does not provide any

23   factual support for these allegations, thus making it impossible to discern what specific

24   conduct underlies plaintiffs' claim.  In their opposition brief, plaintiffs explained that they

25   allege four violations of EMTALA:  (1) the Hospital failed to screen Torres for bacterial

26   pneumonia when he first arrived at the emergency department, (2) the Hospital failed to

27   stabilize Torres' alcohol withdrawal because he was given only one dose of Lorazepam, (3)

28   the Hospital failed to stabilize Torres' bacterial pneumonia, and (4) the Hospital failed to

United States District Court

For the Northern District of California

1  screen Torres for any medical condition when he remained on hospital premises through

2  the following morning.  The court will address each of these theories separately.

3       As to (1), plaintiffs admit that the Hospital did actually screen the decedent upon

4  presentation at the emergency department, but they argue that the screening was "at most

5  a cursory lung exam."  FAC, ¶ 26.  Plaintiffs do not provide any facts regarding this

6  "cursory" lung exam, but instead reason that, because the decedent's bacterial pneumonia

7  was not actually detected, any screening exam must have been inadequate.  In order to

8  state a claim for "failure to screen" under EMTALA, plaintiffs must allege that the decedent

9  was not provided with "an examination comparable to the one offered to other patients

10  presenting similar symptoms," or that the "examination was so cursory that it is not

11  designed to identify acute and severe symptoms that alert the physician of the need for

12  immediate medical attention to prevent serious bodily injury."  Jackson v. East Bay

13  Hospital, 246 F.3d 1248, 1256 (9th Cir. 2001).  Plaintiffs do allege that the lung exam was

14  "cursory," but that allegation is wholly conclusory, and does not permit the court to infer

15  more than the mere possibility of misconduct.  While plaintiffs can state a plausible claim

16  that the examination should have identified the bacterial pneumonia (which is relevant to

17  their negligence cause of action), they appear unable to state a plausible claim that the

18  examination was so cursory that it was not designed to identify the bacterial pneumonia.

19  Thus, to the extent premised on theory (1), plaintiffs' EMTALA claim is DISMISSED.  Given

20  that plaintiffs were previously given leave to amend this claim, the dismissal is with

21  prejudice.

22       As to (2), the court first notes that the FAC contains no allegations supporting this

23  theory.  The FAC states only that the decedent was "given 1 mg. of a sedative and

24  instructed to go to a clinic the next day," and that "[d]efendants knew the 1 mg. of

25  Lorazepam would only be effective for at most a few hours."  FAC, ¶ 1, 7.  Nowhere in the

26  FAC do plaintiffs allege that the Hospital failed to stabilize the decedent's alcohol

27  withdrawal.  However, in their opposition brief, plaintiffs did argue that the decedent's

28  alcohol withdrawal was "never stabilized" and that was "limited for a few hours at most."

United States District Court

For the Northern District of California

1   Under EMTALA, to "stabilize" means "to provide such medical treatment of the condition as

2   may be necessary to assure, within reasonable medical probability, that no material

3   deterioration of the condition is likely to result from or occur during the transfer of the

4   individual from a facility." Bryant v. Adventist Health System/West, 289 F.3d 1162, 1165

5   (9th Cir. 2002) (quoting EMTALA).  Again, plaintiffs rely on wholly conclusory allegations

6   without providing any support for their argument that the administered dose of Lorazepam

7   was insufficient to stabilize the decedent's alcohol withdrawal.  Thus, to the extent

8   premised on theory (2), plaintiffs' EMTALA claim is DISMISSED.  However, because

9   plaintiffs have not yet had an opportunity to amend this claim, the dismissal shall be without

10   prejudice.  Plaintiffs will have one more opportunity to state a claim, under EMTALA, that

11   the Hospital failed to stabilize the decedent's alcohol withdrawal.

12        As to (3), plaintiffs overlook the fact that the "duty to stabilize the patient does not

13   arise until the hospital first detects an emergency medical condition." Eberhardt v. City of

14   Los Angeles, 62 F.3d 1253, 1259 (9th Cir. 1995).  If an emergency medical condition is not

15   detected, then no duty to stabilize arises.  As explained in the discussion of theory (1)

16   above, plaintiffs allege that the Hospital failed to diagnose the decedent's bacterial

17   pneumonia.  Thus, there was no duty to stabilize the undiagnosed bacterial pneumonia,

18   and plaintiffs cannot state a claim for failure to stabilize that undiagnosed condition.

19   Accordingly, to the extent premised on theory (3), plaintiffs' EMTALA claim is DISMISSED

20   with prejudice.

21        As to (4), plaintiffs allege that the Hospital had a duty to perform a second screening

22   of the decedent when he remained on Hospital premises, but they do not explain whether

23   this duty was triggered when the decedent was found in the hospital's cafeteria, or when

24   the decedent was found in the hospital's hallway, or when he was found in the hospital's

25   parking lot the next morning.  Nor do plaintiffs provide any authority for this "second

26   screening" theory.  Again, it appears that plaintiffs' actual complaint is that the first

27   screening examination was improperly performed (which supports plaintiffs' allegation of

28   negligence), not that the Hospital was obligated to continue screening the decedent as long

4

United States District Court

For the Northern District of California

1  as he remained on hospital premises.  Although the court does DISMISS plaintiffs'

2  EMTALA claim to the extent premised on theory (4), the dismissal is without prejudice, so

3  that plaintiffs may attempt to more clearly state a claim under this theory.  Any amended

4  complaint must make clear when this alleged second duty to screen was triggered.

5       Plaintiffs' second cause of action is brought under Welfare & Institutions Code

6  § 15657, which imposes liability "for physical abuse as defined in Section 15610.63, or

7  neglect as defined in Section 15610.57."  The FAC purports to assert a claim under both

8  the "physical abuse" prong and the "neglect" prong, but the "physical abuse" prong covers

9  such conduct as assault, battery, sexual assault, and rape - none of which are alleged in

10  the FAC.  Nor do plaintiffs allege that the decedent was subject to a "physical or chemical

11  restraint or psychotropic medication."  Thus, the court construes this claim as arising under

12  the "neglect" prong.  Section 15610.57 imposes liability for the "negligent failure of any

13  person having the care or custody of an elder or a dependent adult to exercise that degree

14  of care that a reasonable person in a like position would exercise."  Plaintiffs admit that the

15  decedent was not an "elder" within the statute's meaning, as he was 49 years old at the

16  time of his death.  However, plaintiffs do allege that the decedent was a "dependent adult."

17  The statute defines "dependent adult" as one who either (1) has "physical or mental

18  limitations that restrict his ability to carry out normal activities or to protect his rights, but not

19  limited to persons who have physical or developmental disabilities or whose physical or

20  mental abilities have diminished because of age," or (2) "is admitted as an inpatient to a 24-

21  hour health facility."  Cal. Welf. & Inst. Code § 15610.23.

22       Plaintiffs cite two cases in support of their argument that the decedent was a

23  dependent adult.  However, both can be distinguished from the present case.  In George v.

24  Sonoma County Sheriff's Dept., the decedent was a prison inmate who had been admitted

25  as an inpatient to a 24-hour health facility.  732 F.Supp.2d 922, 928 (N.D. Cal. 2010). Thus,

26  the George decedent was a "dependent adult" under the second definition above, whereas

27  plaintiffs in this case admit that Torres was not admitted as an inpatient.  Plaintiffs also rely

28  on People v. Mayte, in which the victim was found to be a "dependent adult" under the first

5

United States District Court
For the Northern District of California

1   definition above.  158 Cal.App.4th 921, 926 (2008).  However, in that case, the victim had

2   suffered a stroke which left her partially paralyzed and with impaired mental abilities similar

3   to those of a 10 year old.  Id. at 925.  In this case, plaintiffs allege only that the decedent's

4   emergency conditions rendered him a "dependent adult," arguing that "[o]ne can not

5   become much more dependent on others than when one is transferred emergently by

6   ambulance to an acute care emergency department."  Dkt. 48 at 5-6; Dkt. 49 at 8.  Under

7   plaintiffs' definition of "dependent adult," any individual between the ages of 18 to 64 who is

8   taken by ambulance to a hospital would fall within the definition.  Plaintiffs provide no

9   authority for this expansive definition, and the court declines to adopt it here.  Because the

10  decedent did not qualify as a dependent adult, there can be no liability under section

11  15657, and plaintiffs' second cause of action is DISMISSED with prejudice.

12         Next, the Hospital defendants and Dr. Meade move to dismiss plaintiffs' "claim" for

13  punitive damages.  As a procedural matter, plaintiffs' request for punitive damages is part

14  of their damages prayer and is not pled as a cause of action.  Regardless, while defendants

15  argue that their conduct "does not arise to the level of recklessness, oppression, fraud, or

16  malice necessary for punitive damages," the court finds that such a conclusion is premature

17  at this stage of the case.  Thus, the court DENIES defendants' motion to dismiss plaintiffs'

18  punitive damages prayer.  However, as noted above, the FAC does fail to differentiate

19  among defendants, so any amended complaint must allege which specific defendants'

20  conduct (and which specific conduct) gives rise to any claim for punitive damages.

21         Finally, defendants move to dismiss plaintiff Stilley from the case for lack of

22  standing.  As the court noted in its previous order, plaintiffs must allege that Ms. Stilley was

23  financially dependent on the decedent.  As pled, the FAC alleges that Ms. Stilley received

24  financial assistance from the decedent, but does not allege actual financial dependence.

25  However, plaintiffs' opposition briefs do add facts sufficient to show Ms. Stilley's financial

26  dependence.  Thus, while defendants' motion to dismiss Ms. Stilley is GRANTED, leave to

27  amend shall be granted so that plaintiffs may incorporate these more specific allegations

28  into the complaint.

United States District Court
For the Northern District of California

1    Plaintiffs have until **September 17, 2013** to file a second amended complaint in

2  accordance with this order.  The amended complaint must specifically identify which claims

3  are brought by which plaintiffs against which defendants.  Plaintiffs must also clearly

4  separate their remaining two theories of relief under EMTALA - explaining which facts

5  underlie their "failure to screen" theory, and which facts underlie their "failure to stabilize"

6  theory.  Plaintiffs are also directed to remove the decedent's name from the case caption,

7  as they admit that his name was inadvertently included.  No new causes of action or parties

8  may be added without leave of court or a stipulation of all parties.  Defendants have until

9  **October 8, 2013** to answer or otherwise respond to the amended complaint.  If the

10  response is another motion to dismiss, it should be noticed in accordance with the local

11  rules, but the court will likely not hold any further hearings on the pleadings.

12

13    **IT IS SO ORDERED.**

14
Dated: August 20, 2013
15
PHYLLIS J. HAMILTON
16    United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

7