UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL JENE TORRES, et al.,

    Plaintiffs,

    v.

SANTA ROSA MEMORIAL HOSPITAL, et al.,

    Defendants.
_____/

No. C 12-6364 PJH

**ORDER DISMISSING FIRST AMENDED COMPLAINT**

        Defendants' motions to dismiss came on for hearing before this court on August 14, 2013. Plaintiffs Michael Jene Torres, Jr., Robert Sexton, and Zenaida Stilley ("plaintiffs") appeared through their counsel, Douglas Fladseth. Defendants Santa Rosa Memorial Hospital and St. Joseph Health System ("the Hospital defendants") appeared through their counsel, Brett Schoel. Defendant Glenn T. Meade, M.D. ("Meade") appeared through his counsel, Sonja Dahl. Having read the papers filed in conjunction with the motions and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS in part and DENIES in part the Hospital defendants' motion to dismiss, and GRANTS in part and DENIES in part Meade's motion to dismiss as follows.

        According to the first amended complaint ("FAC"), the facts are as follows. On September 19, 2011 at about 3:30pm, the decedent, Michael Jene Torres ("Torres") was brought by ambulance to the emergency room at Santa Rosa Memorial Hospital. FAC, ¶ 1. Torres was suffering from neck pain and severe shaking/seizures due to alcohol withdrawal and pneumonia. Id., ¶ 23. Torres was diagnosed with alcohol withdrawal and given one milligram of a sedative (Lorazepam), and instructed to go to a clinic the next day. Id., ¶ 1. Torres was discharged from the hospital at 7:30pm, but did not leave the hospital's

premises. Id., ¶ 3. Instead, Torres went to the hospital's cafeteria until 9:45pm, when he was "forced to leave." Id. At 2:00am, Torres was again found on hospital premises, "seated on the floor in a hallway," and was again "forced to leave the building." Id., ¶ 33. At 7:00am the next morning, Torres was found "lying in the parking lot moaning and in apparent distress." Id., ¶ 3. However, the hospital's nursing supervisor allegedly told hospital staff that Torres was "not our problem," and to call 911 if anyone thought that he needed help. Id., ¶ 36. Torres died in the hospital parking lot later that morning. Id., ¶ 8.

In the FAC, plaintiffs assert three causes of action: (1) violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"); (2) violation of Welfare & Institutions Code § 15657; and (3) general negligence. As a threshold matter, the court notes that the first amended complaint ("FAC") is no clearer than the original complaint in specifying which claims are brought against which defendants, and instead appears to assert all claims against "defendants." At the hearing, plaintiffs made clear that their first cause of action (under EMTALA) is asserted against only the Hospital defendants.

EMTALA imposes two requirements on hospital emergency departments: (1) if any individual comes to the emergency department requesting examination or treatment, a hospital must provide for "an appropriate medical screening examination within the capability of the hospital's emergency medical department" (this is referred to as the "screening" prong); and (2) if the hospital determines that an emergency medical condition exists, it must provide "such treatment as may be required to stabilize the medical condition" (the "stabilization" prong). See 42 U.S.C. § 1395dd. The FAC alleges generally that the Hospital "both fail[ed] to screen and fail[ed] to stabilize," but does not provide any factual support for these allegations, thus making it impossible to discern what specific conduct underlies plaintiffs' claim. In their opposition brief, plaintiffs explained that they allege four violations of EMTALA: (1) the Hospital failed to screen Torres for bacterial pneumonia when he first arrived at the emergency department, (2) the Hospital failed to stabilize Torres' alcohol withdrawal because he was given only one dose of Lorazepam, (3) the Hospital failed to stabilize Torres' bacterial pneumonia, and (4) the Hospital failed to

2

screen Torres for any medical condition when he remained on hospital premises through the following morning. The court will address each of these theories separately.

As to (1), plaintiffs admit that the Hospital did actually screen the decedent upon presentation at the emergency department, but they argue that the screening was "at most a cursory lung exam." FAC, ¶ 26. Plaintiffs do not provide any facts regarding this "cursory" lung exam, but instead reason that, because the decedent's bacterial pneumonia was not actually detected, any screening exam must have been inadequate. In order to state a claim for "failure to screen" under EMTALA, plaintiffs must allege that the decedent was not provided with "an examination comparable to the one offered to other patients presenting similar symptoms," or that the "examination was so cursory that it is not designed to identify acute and severe symptoms that alert the physician of the need for immediate medical attention to prevent serious bodily injury." Jackson v. East Bay Hospital, 246 F.3d 1248, 1256 (9th Cir. 2001). Plaintiffs do allege that the lung exam was "cursory," but that allegation is wholly conclusory, and does not permit the court to infer more than the mere possibility of misconduct. While plaintiffs can state a plausible claim that the examination should have identified the bacterial pneumonia (which is relevant to their negligence cause of action), they appear unable to state a plausible claim that the examination was so cursory that it was not designed to identify the bacterial pneumonia. Thus, to the extent premised on theory (1), plaintiffs' EMTALA claim is DISMISSED. Given that plaintiffs were previously given leave to amend this claim, the dismissal is with prejudice.

As to (2), the court first notes that the FAC contains no allegations supporting this theory. The FAC states only that the decedent was "given 1 mg. of a sedative and instructed to go to a clinic the next day," and that "[d]efendants knew the 1 mg. of Lorazepam would only be effective for at most a few hours." FAC, ¶ 1, 7. Nowhere in the FAC do plaintiffs allege that the Hospital failed to stabilize the decedent's alcohol withdrawal. However, in their opposition brief, plaintiffs did argue that the decedent's alcohol withdrawal was "never stabilized" and that was "limited for a few hours at most."

3

Under EMTALA, to "stabilize" means "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility." Bryant v. Adventist Health System/West, 289 F.3d 1162, 1165 (9th Cir. 2002) (quoting EMTALA). Again, plaintiffs rely on wholly conclusory allegations without providing any support for their argument that the administered dose of Lorazepam was insufficient to stabilize the decedent's alcohol withdrawal. Thus, to the extent premised on theory (2), plaintiffs' EMTALA claim is DISMISSED. However, because plaintiffs have not yet had an opportunity to amend this claim, the dismissal shall be without prejudice. Plaintiffs will have one more opportunity to state a claim, under EMTALA, that the Hospital failed to stabilize the decedent's alcohol withdrawal.

As to (3), plaintiffs overlook the fact that the "duty to stabilize the patient does not arise until the hospital first detects an emergency medical condition." Eberhardt v. City of Los Angeles, 62 F.3d 1253, 1259 (9th Cir. 1995). If an emergency medical condition is not detected, then no duty to stabilize arises. As explained in the discussion of theory (1) above, plaintiffs allege that the Hospital failed to diagnose the decedent's bacterial pneumonia. Thus, there was no duty to stabilize the undiagnosed bacterial pneumonia, and plaintiffs cannot state a claim for failure to stabilize that undiagnosed condition. Accordingly, to the extent premised on theory (3), plaintiffs' EMTALA claim is DISMISSED with prejudice.

As to (4), plaintiffs allege that the Hospital had a duty to perform a second screening of the decedent when he remained on Hospital premises, but they do not explain whether this duty was triggered when the decedent was found in the hospital's cafeteria, or when the decedent was found in the hospital's hallway, or when he was found in the hospital's parking lot the next morning. Nor do plaintiffs provide any authority for this "second screening" theory. Again, it appears that plaintiffs' actual complaint is that the first screening examination was improperly performed (which supports plaintiffs' allegation of negligence), not that the Hospital was obligated to continue screening the decedent as long

4

as he remained on hospital premises.  Although the court does DISMISS plaintiffs' EMTALA claim to the extent premised on theory (4), the dismissal is without prejudice, so that plaintiffs may attempt to more clearly state a claim under this theory.  Any amended complaint must make clear when this alleged second duty to screen was triggered.

      Plaintiffs' second cause of action is brought under Welfare & Institutions Code § 15657, which imposes liability "for physical abuse as defined in Section 15610.63, or neglect as defined in Section 15610.57."  The FAC purports to assert a claim under both the "physical abuse" prong and the "neglect" prong, but the "physical abuse" prong covers such conduct as assault, battery, sexual assault, and rape - none of which are alleged in the FAC.  Nor do plaintiffs allege that the decedent was subject to a "physical or chemical restraint or psychotropic medication."  Thus, the court construes this claim as arising under the "neglect" prong.  Section 15610.57 imposes liability for the "negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise."  Plaintiffs admit that the decedent was not an "elder" within the statute's meaning, as he was 49 years old at the time of his death.  However, plaintiffs do allege that the decedent was a "dependent adult."  The statute defines "dependent adult" as one who either (1) has "physical or mental limitations that restrict his ability to carry out normal activities or to protect his rights, but not limited to persons who have physical or developmental disabilities or whose physical or mental abilities have diminished because of age," or (2) "is admitted as an inpatient to a 24-hour health facility."  Cal. Welf. & Inst. Code § 15610.23.

      Plaintiffs cite two cases in support of their argument that the decedent was a dependent adult.  However, both can be distinguished from the present case.  In <u>George v. Sonoma County Sheriff's Dept.</u>, the decedent was a prison inmate who had been admitted as an inpatient to a 24-hour health facility.  732 F.Supp.2d 922, 928 (N.D. Cal. 2010).  Thus, the <u>George</u> decedent was a "dependent adult" under the second definition above, whereas plaintiffs in this case admit that Torres was not admitted as an inpatient.  Plaintiffs also rely on <u>People v. Mayte</u>, in which the victim was found to be a "dependent adult" under the first

definition above. 158 Cal.App.4th 921, 926 (2008). However, in that case, the victim had suffered a stroke which left her partially paralyzed and with impaired mental abilities similar to those of a 10 year old. Id. at 925. In this case, plaintiffs allege only that the decedent's emergency conditions rendered him a "dependent adult," arguing that "[o]ne can not become much more dependent on others than when one is transferred emergently by ambulance to an acute care emergency department." Dkt. 48 at 5-6; Dkt. 49 at 8. Under plaintiffs' definition of "dependent adult," any individual between the ages of 18 to 64 who is taken by ambulance to a hospital would fall within the definition. Plaintiffs provide no authority for this expansive definition, and the court declines to adopt it here. Because the decedent did not qualify as a dependent adult, there can be no liability under section 15657, and plaintiffs' second cause of action is DISMISSED with prejudice.

Next, the Hospital defendants and Dr. Meade move to dismiss plaintiffs' "claim" for punitive damages. As a procedural matter, plaintiffs' request for punitive damages is part of their damages prayer and is not pled as a cause of action. Regardless, while defendants argue that their conduct "does not arise to the level of recklessness, oppression, fraud, or malice necessary for punitive damages," the court finds that such a conclusion is premature at this stage of the case. Thus, the court DENIES defendants' motion to dismiss plaintiffs' punitive damages prayer. However, as noted above, the FAC does fail to differentiate among defendants, so any amended complaint must allege which specific defendants' conduct (and which specific conduct) gives rise to any claim for punitive damages.

Finally, defendants move to dismiss plaintiff Stilley from the case for lack of standing. As the court noted in its previous order, plaintiffs must allege that Ms. Stilley was financially dependent on the decedent. As pled, the FAC alleges that Ms. Stilley received financial assistance from the decedent, but does not allege actual financial dependence. However, plaintiffs' opposition briefs do add facts sufficient to show Ms. Stilley's financial dependence. Thus, while defendants' motion to dismiss Ms. Stilley is GRANTED, leave to amend shall be granted so that plaintiffs may incorporate these more specific allegations into the complaint.

Plaintiffs have until **September 17, 2013** to file a second amended complaint in accordance with this order. The amended complaint must specifically identify which claims are brought by which plaintiffs against which defendants. Plaintiffs must also clearly separate their remaining two theories of relief under EMTALA - explaining which facts underlie their "failure to screen" theory, and which facts underlie their "failure to stabilize" theory. Plaintiffs are also directed to remove the decedent's name from the case caption, as they admit that his name was inadvertently included. No new causes of action or parties may be added without leave of court or a stipulation of all parties. Defendants have until **October 8, 2013** to answer or otherwise respond to the amended complaint. If the response is another motion to dismiss, it should be noticed in accordance with the local rules, but the court will likely not hold any further hearings on the pleadings.

**IT IS SO ORDERED.**

Dated: August 20, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge